UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PAMELA EILENFELDT, as next friend of her minor child, J.M., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:12-cv-04029-SLD-JEH |
| UNITED C.U.S.D. #304 BOARD OF EDUCATION, a Political Subdivision of the State of Illinois; JEFF WHITSITT, an individual; KRISTEN NELSON, an individual; RYAN WESTART, an individual; LORI SCHROCK, an individual; DONNA WINBIGLER, an individual; DENNIS BROWN, an individual; and DOES I-XX, inclusive, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

ORDER

Plaintiff Pamela Eilenfeldt brings this action on behalf of her son J.M., who was continuously bullied and harrassed when he was in the seventh and eighth grades at United Junior High School in Monmouth, Illinois. Eilenfeldt alleges that Defendants enabled, and, in some instances, encouraged, students to bully and harass J.M. At issue are Defendants' Motion to Dismiss the Amended Complaint, ECF No. 25, and Defendants' Motion to Supplement Case Law in Support of Motion to Dismiss First Amended Complaint, ECF No. 30. For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part, and the Motion to Supplement Case Law is granted. Counts I and V through VIII are dismissed. The Court grants Eilenfeldt leave to amend her complaint consistent with this Order.

BACKGROUND

At the motion to dismiss stage, well-pleaded facts alleged in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074,

1

1081 (7th Cir. 2008). Accordingly, the Court rests its decision on the following factual allegations:

I. **Parties**

Eilenfeldt brings this action on behalf of her minor child J.M. against various individuals and entities associated with the United Community Unit School District #304 ("C.U.S.D." or "School District"). Eilenfeldt asserts that Defendants acted under color of law and makes her claims against each individual Defendant in his or her individual capacity. Defendants' identities are as follows:

1. Defendant C.U.S.D. is a political subdivision of the State of Illinois and operates United Junior High School, a public educational institution located in Monmouth, Illinois.
2. Defendant Jeff Whitsitt is the superintendent of schools for the School District.
3. Defendant Kristen Nelson is the principal of United Junior High School.
4. Defendants Ryan Westart, Lori Schrock, and Donna Winbigler are teachers at United Junior High School.
5. Defendant Dennis Brown is a guidance counselor at United Junior High School.
6. The true names and capacities of Defendants Doe I-XX[1] are unknown to Eilenfeldt. Eilenfeldt is informed and thereon alleges that each Defendant designated as Doe is responsible in some manner for the events referred to in this action and proximately caused J.M.'s injuries.

II. **Bullying and Harassment of J.M.**

Various students at United Junior High School began bullying and harassing J.M. in January 2011 when he was a seventh-grader. The bullying and harassment continued through

---

[1] Eilenfeldt references "Does I-XX" in the caption of her Amended Complaint, but at other points she refers to "Does I-X." Because the caption names Does I-XX, the Court will use that designation to refer to them.

2

the end of that academic year and into the following academic year when J.M. was an eighth grader. During this period, students bullied J.M. by, among other things, taunting, teasing, pushing, punching, and kicking him. Except for one instance of bullying, School District officials and United Junior High School administrators and teachers never investigated complaints that J.M. had been bullied, or punished a student for bullying J.M. To the contrary, administrators and teachers facilitated ongoing bullying of J.M. by failing to stop the bullying, actively encouraging bullying, and punishing J.M. for defending himself while being bullied.

The bullying began in January, 2011 when "T1.," "P.," and "D1." (presumably other students, though Eilenfeldt does not make this clear) repeatedly shoved J.M. in the hallways and inappropriately touched him in the locker room. Eilenfeldt immediately reported this conduct to three of J.M.'s teachers, Westart, Winbigler, and a Mr. Noonan.[2] Despite the report, J.M.'s teachers did not investigate the incidents or punish the students who were involved. When responding to the complaints, Winbigler said that J.M. "brought some of this on himself."

These initial incidents were just the beginning of the bullying. Students verbally taunted J.M by calling him a rapist, pedophile, and child molester and suggesting that he was sexually attracted to young boys. In addition to the verbal bullying, students produced pictures, graffiti artwork, and videos depicting J.M. as a pedophile and child molester. Students also continued to physically bully J.M. For instance, students kicked, punched, and pushed J.M. One student even threatened to "shank" J.M. with a knife. While the student who threatened to "shank" J.M. was suspended for two weeks, none of the other students who bullied J.M. were punished. Eilenfeldt alleges that when J.M. tried to stand up for himself, J.M. was punished but the bullies were not.

Eilenfeldt continued to report instances of bullying to Nelson and J.M.'s teachers, but almost nothing resulted from these complaints. Instead, they usually blamed J.M. for the

---
[2] Noonan is not one of the Defendants.

bullying. For example, Winbigler said that J.M. "gives back about as much as he gets" and that he just "needs to stay away from certain kids" and "learn how to make life easier for himself." In another example, Eilenfeldt complained to Nelson that it was difficult for J.M. to focus on learning because students had been calling him sexually perverted names, repeatedly punching him in the head, and kicking him in the legs. Nelson responded that the bullying was J.M.'s fault and simply assigned him a seat on the school bus.

The bullying and harassment continued into the next school year when J.M. was in the eighth grade. Eilenfeldt continued complaining to school administrators and teachers, but they did not do anything to stop the bullying. Instead, their conduct facilitated more bullying. For example, a Ms. Kopriva gave J.M. detention for telling two bullies that he was not a rapist after those students had called him a rapist in her classroom.

Eventually, in October, 2011, Eilenfeldt spoke with Whitsitt because school administrators and teachers were not doing anything to prevent students from bullying and harassing J.M. But Whitsitt did not take any action to address Eilenfeldt's complaints. After speaking with Whitsitt, Eilenfeldt met with Nelson and Brown to discuss the ongoing bullying and harassment. One topic of discussion was the school's punishment of the student who threatened to stab J.M. with a knife. Eilenfeldt had two concerns regarding this incident. First, Eilenfeldt was concerned because it was the only instance that the school had punished any student for bullying J.M. Second, the school only punished the student by suspending him for two weeks instead of expelling him for one year and reporting the incident to authorities, both of which are required under the student handbook. Despite these meetings, Whitsitt, Nelson, and Brown took no action to address Eilenfeldt's concerns.

The bullying and harassment continued after Eilenfeldt met with various school and School District employees. Again, administrators and teachers refrained from punishing the bullies. Instead, they punished J.M. even though he was the one being bullied. In one of Westart's classes, J.M. tried to defend himself from bullies. Following the altercation, Westart asked the class whether J.M. should be punished by having to write out the preamble to the United States Constitution twenty-five times, and the class agreed to impose the punishment. A few days later, unidentified school administrators and teachers, with the knowledge that J.M. had been recently bullied, commended unspecified eighth graders for being the "best group of kids."

The bullying continued into December, 2011, and January, 2012. One student showed to the rest of his classmates an image of a man standing next to a van and looking at children. This student told his classmates that the man was J.M. and that J.M. was going to rape the children. Students also continued to repeatedly shove J.M. in the hallways. One of the students that pushed J.M. in the hallways also sang a song about how J.M. was going to rape him. When J.M. reported this conduct to Schrock, she took no action. Instead, Schrock scolded J.M. for asking the bully to sing the song to her and told him that it was his fault that the bully sang the song. Later that day, Eilenfeldt complained about the incident to Nelson, but Nelson took no action.

As a result of the constant bullying and harassment that occurred when J.M. was in the seventh and eighth grades, J.M. suffered physical pain and mental anguish. One of J.M.'s doctors treated J.M. for school-avoidance anxiety disorder caused by verbal and physical bullying and harassment at school. The doctor recommended that it was in J.M.'s best interest not to return to school until the school addressed his safety and well-being. Eilenfeldt, on behalf of J.M., makes various claims against the School District, Superintendent Whitsitt, Principal

5

Nelson, Guidance Counselor Brown, and teachers Westart, Schrock, and Winbigler. A more detailed explanation of these claims is provided below.

## DISCUSSION

### I. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) does not resolve the merits of a particular claim. Instead, it tests only the sufficiency of the allegations set forth in the complaint. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A court will accept the factual allegations in the complaint as true, but they must give "'fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). In sum, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In ruling on a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, the facts set forth in the complaint are viewed "in the light most favorable to the nonmoving party." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Facts in the complaint that disprove the asserted claim should be considered, and the court need not

accept unsupported conclusions of law. *N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (citing *Twombly*, 550 U.S. 544 (2007)) (conclusory allegations are "not entitled to be assumed true").

## II. Defendants' Motion to Dismiss the Amended Complaint

Eilenfeldt's Amended Complaint contains eight causes of action. First, Eilenfeldt alleges that the School District violated Title IX by subjecting J.M. to sexual harassment and sexual discrimination. Second, she claims that the School District is liable under 42 U.S.C. § 1983 for employing a de facto policy that deprived J.M. of his rights to equal protection and due process. Third, she claims that all Defendants are liable under § 1983 for depriving J.M. of his substantive due process rights. Fourth, she claims that all Defendants are liable under § 1983 for depriving J.M. of his equal protection rights. The fifth, sixth, and seventh claims all relate to some form of negligence on the part of Defendants. Finally, Eilenfeldt alleges that Defendants are liable for intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants move to dismiss the Amended Complaint on the basis that Eilenfeldt has failed to adequately plead any of her claims, and assert immunity for claims five through eight. In broad terms, Defendants argue that Eilenfeldt's claims are inadequate because (1) they are confusing and fail to give Defendants fair notice of the grounds for each claim; and (2) she does not allege facts to support every element of her claims. For the reasons given below, the Court dismisses Count I, with leave to amend, and Counts V–VIII, and denies the motion to dismiss for Counts II–IV.

### A. Rule 8(a)'s Pleading Standard and Rule 10(b)'s Clarity Requirements

Defendants argue that Eilenfeldt has not complied with the Court's March 25, 2013 Order, ECF No. 23. As the Court noted in that Order, Federal Rule of Civil Procedure 8 requires that plaintiffs give defendants fair notice of the claims against them as well as the grounds supporting those claims. Fed. R. Civ. P. 8(a). Additionally, the Court explained that plaintiffs should disaggregate their claims into separate claims when "doing so would promote clarity." Fed. R. Civ. P. 10(b). Eilenfeldt's Amended Complaint still does not satisfy these rules. Accordingly, it is appropriate to explain another rule.

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While a district court should freely grant such leave because the "pleading rules favor decisions on the merits rather than technicalities," there are limits to that generosity. *Stanard v. Nygren*, 658 F.3d 792, 800–01 (7th Cir. 2011). Among other reasons, a court will deny leave for "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[C]onsiderable deference" is given to district judges who have dismissed cases with prejudice when plaintiffs have repeatedly failed to remedy deficiencies in their pleadings. *Stanard*, 658 F.3d at 801–02 (affirming a district court's denial of leave to file a second amended complaint and its dismissal of the case with prejudice).

Defendants contend that Eilenfeldt has not complied with certain aspects of the Court's March 25, 2013 Order, ECF No. 23. First, Defendants argue that Eilenfeldt continues to lump all Defendants together and, by doing so, has failed to specify which Defendants violated which laws. Eilenfeldt insists that her Amended Complaint no longer lumps Defendants together because she has added detailed allegations regarding each Defendant. The Court agrees with

Eilenfeldt that she has adequately put each defendant on notice of the conduct she alleges forms the basis of her claims.

Second, Defendants argue that Eilenfeldt has not followed the Court's Order to separate out each cause of action from her numbered counts. Just like the original complaint, the Amended Complaint groups distinct causes of action under a single "cause of action," making it difficult for Defendants and the Court to determine which allegations against which Defendants are the basis for certain causes of action. For example, the "Eighth Cause of Action" combines the separate actions of intentional infliction of emotional distress and negligent infliction of emotional distress. By disregarding the Court's March 25, 2013 Order, Eilenfeldt continues to plead in a confusing manner. Limiting each cause of action to a single claim would greatly improve clarity. Because Eilenfeldt has requested leave to amend to the extent she still has not complied with these requirements, the Court grants Eilenfeldt leave to amend consistent with this Order. Parts of the Amended Complaint suffer from substantive deficiencies, too, as described below.

## III. Title IX Claim

Defendants argue that Eilenfeldt's Title IX claim fails because it does not show that the student bullies discriminated against J.M. on the basis of his gender. Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In certain circumstances, an individual who suffers student-on-student sexual harassment has a private right of action against the recipient of federal funding. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). To succeed on a Title IX peer harassment claim, a plaintiff must show, among other things, that

"the funding recipient act[ed] with deliberate indifference to known acts of harassment in its programs or activities," and that the harassment was "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* at 633. The harassment must be 'on the basis of sex,' meaning the harassment was motivated by either the plaintiff's gender or failure to conform to gender norms. *See Corral v. UNO Charter Sch. Network, Inc.*, No. 10-cv-03379, 2013 WL 1855824, at *5 (N.D. Ill. May 1, 2013) ("[H]arassment based solely upon a person's sexual preference or orientation (and not on one's sex or conformity to gender norms) is not a basis for a sex discrimination claim.").

Eilenfeldt argues that she has stated a claim under Title IX because the harassment was "of a sexual nature." The harassment was sexual in nature because students called J.M. a rapist, pedophile, and child molester, and stated that he was attracted to young boys. Each of these alleged insults are about deviant sexual conduct, but are unrelated to J.M.'s gender or his failure to conform to gender norms. Absent allegations that students harassed J.M. *because* of his male gender or his failure to conform to male gender norms, the Court concludes that Eilenfeldt has failed to state a claim under Title IX. Because Eilenfeldt has requested leave to amend any portion of her Amended Complaint found to be deficient, the Court grants her leave to amend her Title IX claim.

### IV. Section 1983 Claims

Eilenfeldt asserts three claims based on 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that (1) some individual deprived her of a federally protected right; and (2) the individual who deprived her of that right acted under color of state law. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 459 (7th Cir. 2007) (per curiam).

### A. *Monell* Claim

Eilenfeldt claims that the School District is liable under § 1983 because its employees deprived J.M. of certain civil rights. While "a municipality cannot be held liable *solely* because it employs a tortfeasor," a municipality may be liable "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To hold a municipality liable under § 1983 for an official custom or policy, a plaintiff must allege that: (1) the municipality "had an express policy that, when enforced, causes a constitutional deprivation;" (2) the municipality "had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law;" or (3) his "constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Courts may not, however, dismiss § 1983 claims under Federal Rule of Civil Procedure 12(b)(6) merely "for lack of factual specificity"; plaintiffs "need not allege all, or any of the facts logically entailed by the claim . . . A plaintiff does not have to plead evidence." *McCormick*, 230 F.3d at 325. Rather, there must simply be "sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago*, 75 F.3d 318, 326 (1996).

Defendants attack Eilenfeldt's *Monell* claim on two grounds. First, Defendants assert that Eilenfeldt has failed to state a claim because she has not alleged facts supporting her claim of a de facto policy that deprived J.M. of his constitutional rights. The Court is not persuaded by this argument. Even though Eilenfeldt's allegations fail to track any of the three policy or custom types outlined in *McCormick*, 230 F.3d at 324, her allegations are not so bare as to

deprive the School District of notice of the claims against it. Defendants deduce that the policy Eilenfeldt's claim identifies is of the "widespread practice" variety. Mot. Dismiss Am. Compl. 18, ECF No. 29 ("Plaintiff has alleged . . . the existence of a '*defacto* policy' . . . suggesting he is relying on the widespread practice [theory] . . . "). In other words, Eilenfeldt has pleaded sufficient facts to allow Defendants, and the Court, to understand the gravamen of her complaint. *See Doherty*, 75 F.3d at 326.

Second, Defendants correctly assert that the School District is not subject to punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (precluding punitive damages against a municipality under § 1983). Eilenfeldt does not dispute that the School District is not subject to punitive damages. Accordingly, the Court dismisses Eilenfeldt's claim for $75,000 in punitive damages against the School District.

**B.      Substantive Due Process Claim**

Defendants argue that Eilenfeldt has failed to state her substantive due process claim in three ways. First, Defendants argue that Eilenfeldt has failed to state her substantive due process claim because she has not alleged that protection from school bullying is a fundamental right. Substantive due process is a limited doctrine that provides no blanket protections. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). To state a claim, a plaintiff must allege she was deprived of a cognizable "life, liberty, or property" interest. U.S. Const. amend. XIV, § 1. Eilenfeldt argues that she is not claiming that protection from school bullying is a fundamental right; rather, the interest she seeks to protect is a right to public education or a property interest in public education. Further, Eilenfeldt argues that a substantive due process violation can occur even when no fundamental right is involved. "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to

a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee*, 330 F.3d at 467. Here, Eilenfeldt has adequately alleged that Defendants acted arbitrarily and that their actions were not rationally related to a legitimate government interest.

Second, Defendants argue that the conduct alleged by Eilenfeldt does not "shock the conscience" such that it is arbitrary in the constitutional sense. *See generally Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). Whether conduct "shocks the conscience," however, is a fact-bound inquiry that, in this case, is not appropriately decided at the motion-to-dismiss stage. *See King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007).

Third, Defendants argue that if Eilenfeldt is pursuing a theory that the school failed to protect J.M., she has failed to state her claim because she has not alleged a special relationship between Defendants and J.M. But Eilenfeldt does not base her entire substantive due process claim on the failure to protect from third parties; she also alleges that disciplinary decisions, and the participation of school employees in J.M.'s bullying, violated his substantive due process rights. In general, a "plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Likewise, a plaintiff is not required to "set forth explicitly his theory of the case." *Riemer v. Illinois Dep't of Transp.*, 148 F.3d 800, 804 (7th Cir. 1998). Therefore, since Defendants' argument attacks only one theory by which Eilenfeldt could establish a substantive due process violation, the Court declines to dismiss the entire claim based on that argument.

### C. Equal Protection Claim

Defendants argue that Eilenfeldt has failed to state her equal protection claim because she has not identified any similarly situated individuals. The Fourteenth Amendment's Equal Protection Clause is typically "understood as protecting members of vulnerable groups from unequal treatment attributable to the state," but the clause "also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called 'class-of-one.'" *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). The elements of a class-of-one claim—and what a plaintiff must plead in the complaint to state such a claim—are not fully settled in this Circuit. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (5-5 division resulting in no controlling opinion), *cert. denied*, 133 S. Ct. 654 (2012) (mem.). "[A]t a minimum," the claim "would require proof that the defendants intentionally treated [a plaintiff] differently from others situated similarly to [him or] her for no rational reason," *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012)), and it is unclear whether plaintiffs must also show improper motive, or "illegitimate animus," to successfully prove the claim, *see Thayer*, 705 F.3d at 254. On the issue of comparators, however, the Seventh Circuit has stated that there is "no basis for requiring the plaintiff to identify the similarly situated person *in the complaint*," even where a plaintiff must do so to ultimately prove his or her case. *Geinosky v. Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) (emphasis in original). Therefore, the Court declines to dismiss Eilenfeldt's equal protection claim for failure to plead any comparators.

Defendants' second challenge to Eilenfeldt's equal protection claim—that it does not apply to "relationships requiring discretionary decision making based on individual

assessments"—is also a question more appropriately left to a later stage in this litigation. The Court is not willing to extend the existing case-law on this issue, which currently encompasses only the public-employment and law-enforcement contexts, based only on the pleadings. *See Thayer*, 705 F.3d at 255–56. For the foregoing reasons, the Motion to Dismiss the Amended Complaint is denied as to this claim.

### D.     Privileges and Immunities Claim

Defendants contend that the Third and Fourth Causes of Action—substantive due process and equal protection—fail to apprise them of the grounds for those causes of action because they each also allege that Defendants deprived J.M. of the "privileges and immunities secured to him by the Fourteenth Amendment." *See* Am. Compl. ¶¶ 67, 75. Based on Eilenfeldt's opposition brief, it appears that she is not actually alleging that Defendants deprived J.M. of the privileges and immunities secured to him by the Fourteenth Amendment in these two causes of action. Pl.'s Opp'n to Mot. Dismiss 14–15, ECF No. 28. There, Eilenfeldt responds to Defendants' argument by stating that neither the Third Cause of Action nor the Fourth Cause of Action is based on a deprivation of privileges and immunities theory. In light of this clarification, and to avoid any confusion going forward, the Court orders Eilenfeldt to strike any reference to "privileges and immunities" from these two causes of action to the extent she is not pursuing that type of claim.

## V.     Plaintiff's Tort Claims

The Fifth, Sixth, Seventh, and Eighth Causes of Action in the Amended Complaint allege various torts. Defendants argued in their Motion to Dismiss that they are immune from these claims under the Illinois Tort Immunity Act, 745 ILCS 10/2-201. In their Motion to Supplement Case Law, ECF No. 30, Defendants asked the Court to consider *Hascall v. Williams*, 996 N.E.2d

15

1168 (Ill. App. Ct. 2013) as additional support for that argument. Eilenfeldt did not respond to the Motion. Since *Hascall* is remarkably similar to the instant case, and since it merely bolsters an argument to which Eilenfeldt had the chance to respond in her opposition brief, the Court now grants the Motion to Supplement Case Law.

*Hascall* held that section 2-201 of the Illinois Tort Immunity Act barred the plaintiffs' claim for intentional infliction of emotional distress against a school district, board, and employees; its reasoning would apply to any claim that sounds in tort. Section 2-201 states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

There is no exception for willful and wanton conduct under Section 2-201. *In re Chi. Flood Litig.*, 680 N.E.2d 265, 273 (Ill. 1997). Section 2-109 extends this immunity to the employee's employer: "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. For Defendants to be immune from Eilenfeldt's tort claims, they must demonstrate that the employees' acts or omissions leading to the alleged injuries are both policy determinations and exercises of discretion. *See Harinek v. 161 North Clark Street Ltd. Partnership*, 692 N.E.2d 1177, 1181 (1998).

The court in *Hascall* found that the defendants' acts and omissions in handling bullying incidents were both policy determinations and exercises of discretion. Like the *Hascall* court, this Court is "sympathetic to plaintiff['s] claims and acknowledge the seeming harshness of the result," but can find no cogent means to distinguish that case from this one. Eilenfeldt made no effort to respond to Defendants' argument that the alleged acts and omission are policy determinations and exercises of discretion, even though she was given a second opportunity to

16

do so with Defendant's filing of the Motion to Supplement. Her allegation that the acts and omissions at issue here were "willful and wanton" is irrelevant because the Section 2-201 immunity covers such conduct. Therefore, the Court dismisses Counts V–VIII.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Amended Complaint, ECF No. 25, is GRANTED IN PART and DENIED IN PART, and Defendants' Motion to Supplement Case Law, ECF No. 30, is GRANTED. The Court GRANTS Eilenfeldt leave to amend her complaint consistent with this Order.

Entered this 25th day of March, 2014.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE